1

2

3

4

5

6

7

8

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| JuJuan Gibson,<br><br>                Petitioner,<br><br>v.<br><br>R. Bock, et al.,<br><br>                Respondents. | No. CV-13-01548-TUC-DCB-DTF<br><br>**REPORT AND RECOMMENDATION** |

Petitioner JuJuan Gibson, presently incarcerated at the Arizona State Prison-Hualapai Unit, in Kingman, Arizona, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. In accordance with the Rules of Practice of the Court, this matter was referred to Magistrate Judge Ferraro for Report and Recommendation. Before this Court are the Petition (Doc. 1), Respondents' Answer (Doc. 16) and Petitioner's Reply (Doc. 17). At the Court's request, the parties each filed supplemental briefs. (Docs. 22, 23.) The Magistrate Judge recommends that the District Court, after its independent review of the record, dismiss the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Gibson was convicted in the Superior Court of Pima County of two counts of armed robbery, two counts of aggravated assault and one count of aggravated robbery. (Doc. 16, Exs. A, B.) He was sentenced to concurrent sentences, the longest of which was 7.5 years. (*Id*., Ex. A.)

No single state court summarized all of the trial evidence relevant to the claims raised by Gibson in his Petition. First, the Court sets forth the background included in the post-conviction court's ruling:

> The bank tellers who were robbed at gunpoint testified that they included "bait bills" in the money given to the Petitioner and his co-defendant. A tracking device was hidden inside the bait bills. Another employee of the grocery store testified that she saw two African-American males outside of the store in the parking lot that were acting suspicious near a vehicle. This employee described their vehicle as an "older model four-door white car" with tinted windows. The employee further described the car by saying that the tint film on the rear passenger window was peeling and that the paint on the rear passenger door was sanded down to the metal.
>
> After police officers followed the signal from one of the tracking devices to an apartment complex, one officer was able to locate a vehicle that matched the description given by the grocery store employee. That employee was taken to the vehicle at the apartment complex and she positively identified the vehicle as being the same one she had seen earlier in the day at the grocery store parking lot.
>
> A Tucson police officer was surveilling the parking lot of the apartment complex when he observed a taxi enter the parking lot, briefly stop in a parking space, and then pull out of the space and headed back toward the entrance to the complex. Another officer who was positioned closer toward the entrance of the parking lot stopped the taxicab and officers [sic]. Inside the taxicab were the Petitioner and his co-defendant. The officers subsequently discovered that the co-defendant was the registered owner of the vehicle identified by the grocery store employee. During a search incident to arrest, the Petitioner and his co-defendant were found to be in possession of bundles of cash including some of the bait bills.

(Doc. 16, Ex. N at 1-2.)

Next, the Court summarizes additional relevant facts from the trial transcripts. In the afternoon after the robbery, on October 27, 2009, the manager of an apartment complex, where the co-defendant lived with his mother, saw the co-defendant and another African-American male come from the west side of the complex. They presumably had come over the wall from another apartment complex. (Doc. 22, Ex. II at 78-80, Ex. JJ at 140-42.) The white car associated with the robbery was found in that adjacent apartment complex. (*Id.*, Ex. JJ at 118-19, 158.) Sometime that afternoon, Gibson and another African-American male were picked up by a cab from the co-defendant's apartment complex and taken to a Day's Inn. The cab driver recognized Gibson because they had previously worked together. (Doc. 23, Ex. II at 89-94.) Two

African-American men arrived by cab at the Days Inn and checked into a room under the name of the co-defendant, paying from a stack of bills. (Doc. 23, Ex. JJ at 21, 39; Ex. KK at 53.) Money wrappers from the bank that was robbed were found in the hotel room. (*Id.*, Ex. JJ at 9-11.) Later that evening, a cab picked up Gibson and his co-defendant at the Days Inn and drove them back to the co-defendant's apartment complex where they were arrested. (*Id.*, Ex. JJ at 46-49.)

As of March 2010, the vehicle associated with the robbery was registered to Gibson; however, the registration expired on October 20, 2009. (*Id.*, Ex. JJ at 188, 190.) A three-day permit for the vehicle was issued on October 27, 2009, in the name of the co-defendant; it was located in the back window of the car after the robbery. (*Id.* at 188-89; Ex. KK at 19-20.)

On appeal, counsel filed a brief based on *Anders v. California*, 386 U.S. 738 (1967), avowing that he found no issues to raise on appeal. (*Id.*) The Arizona Court of Appeals gave Gibson the opportunity to file a supplemental pro se brief, which he did not do. (*Id.*, Exs. A, D, E.) The court of appeals found substantial evidence supported Gibson's convictions and determined the sentences were lawful, and it affirmed both. (*Id.*)

Gibson filed a notice for post-conviction relief (PCR). (Doc. 16, Ex. G.) Appointed counsel informed the court that he could find no meritorious issues; therefore, Gibson filed a pro se petition. (*Id.*, Exs. H, I, J, K.) The PCR court denied relief on December 13, 2011, finding some claims precluded and others without merit. (*Id.*, Ex. N.)

On January 12, 2012, Gibson requested an extension for filing a petition for review, and the PCR court granted an extension until February 10, 2012. (*Id.*, Exs. P, Q.) On January 18, Gibson requested an extension to file a motion for reconsideration from the denial of PCR. (*Id.*, Ex. R.) The court granted an extension until February 27, 2012. (*Id.*, Ex. S.) Gibson filed a motion for reconsideration on January 31, 2012. (*Id.*, Ex. T.) On February 1, the PCR court construed that motion as one for rehearing and dismissed it

1    as untimely. (*Id.*, Ex. O.) In that same order, the PCR court reaffirmed the February 10

2    deadline for a petition for review. (*Id.*) Gibson filed a motion for correction, arguing that

3    his motion for reconsideration was not untimely as he had been given until February 27

4    to file it. (*Id.*, Ex. U.) His request was denied. (*Id.*, Ex. V.) On March 26, Gibson filed a

5    Petition for Review, which the court of appeals denied as untimely. (*Id.*, Exs. W, X.) His

6    request for reconsideration of that decision was denied. (*Id.*, Exs. Y, Z.)

7         Gibson subsequently filed a "Writ of Coram Nobis, Writ of Error." (*Id.*, Ex. CC.)

8    The superior court construed the motion as a successive PCR petition and denied it. (*Id.*,

9    Ex. DD.) The appellate court granted review but denied relief. (*Id.*, Ex. EE.) Gibson's

10   petition for review to the Arizona Supreme Court was denied as untimely. (*Id.*, Exs. FF,

11   GG.)

12                                    **DISCUSSION**

13        Gibson raises four claims in his Petition. Respondents contend the claims are

14   either not cognizable or not exhausted.

15                         **EXHAUSTION AND PROCEDURAL DEFAULT**

16        **Principles of Exhaustion and Procedural Default**

17        A writ of habeas corpus may not be granted unless it appears that a petitioner has

18   exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v.*

19   *Thompson*, 501 U.S. 722, 731 (1991). To properly exhaust, a petitioner must "fairly

20   present" the operative facts and the federal legal theory of his claims to the state's highest

21   court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848

22   (1999); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277-

23   78 (1971).

24        In Arizona, there are two primary procedurally appropriate avenues for petitioners

25   to exhaust federal constitutional claims: direct appeal and PCR proceedings. A habeas

26   petitioner's claims may be precluded from federal review in two ways. First, a claim may

27   be procedurally defaulted in federal court if it was actually raised in state court but found

28   by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729-30.

Second, a claim may be procedurally defaulted if the petitioner failed to present it in state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1; *see also Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (stating that the district court must consider whether the claim could be pursued by any presently available state remedy). If no remedies are currently available pursuant to Rule 32, the claim is "technically" exhausted but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1; *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *Reed v. Ross*, 468 U.S. 1, 9 (1984). However, the Court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates legitimate cause for the failure to properly exhaust the claim in state court and prejudice from the alleged constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim were not heard on the merits in federal court. *Coleman*, 501 U.S. at 750.

**Claim 1**

Gibson summarizes this claim as "procedural default on first Rule 32 – Ineffective assistance of counsel (6th and 14th Amendment)." (Doc. 1 at 6.) He cites an exhibit attached to the Petition for the supporting facts. In the exhibit, Gibson lays out the time line of his PCR proceedings, including his motion for reconsideration and petition for review, both of which were denied as untimely. (*Id.* at 16-17.) Gibson argues that his filings were timely and he seeks to have his PCR proceedings reinstated. (*Id.* at 17.)

Although Gibson's caption of this claim alludes to ineffective assistance, the supporting statement alleges solely error in the PCR proceeding. He makes no mention of any errors by counsel, likely because Gibson ultimately represented himself in his PCR proceeding. He may be asserting that due to errors in his PCR proceeding his ineffective assistance of counsel (IAC) claims are procedurally defaulted?

1    Alleged errors in the PCR process are not cognizable in a federal habeas corpus

2    proceeding because they do not attack the lawfulness of a petitioner's detention. *See*

3    *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) (per curiam) (finding allegations of

4    error in state post-conviction review process non-cognizable); *Gerlaugh v. Stewart*, 129

5    F.3d 1027, 1045 (9th Cir. 1997). Therefore, this claim is not cognizable.

6    Alternatively, this claim was not fairly presented in state court. If Gibson were to

7    return to state court now to litigate this claim, it would be found waived and untimely

8    under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because it

9    does not fall within an exception to preclusion. Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h).

10   Therefore, Claim 1 is technically exhausted but procedurally defaulted.

11   **Claim 2**

12   This claim states only "Actual Innocent." (Doc. 1 at 7.) Although Gibson refers to

13   exhibit B, in that exhibit he provides only argument related to IAC as raised in Claim 3.

14   (*Id.* at 49-57.) Gibson argues that his counsel was ineffective for failing to advocate for

15   his actual innocence. But he provides no argument to support a stand-alone actual

16   innocence claim. In his Reply, he again argues that this claim is an IAC claim based on

17   actual innocence. (Doc. 17 at 3.)

18   Gibson may only raise claims in his federal habeas petition based on a violation of

19   the United States Constitution or federal law. 28 U.S.C. § 2254(a). In Claim 2, Petitioner

20   has not asserted a federal claim (distinct from Claim 3), therefore, it is not cognizable

21   before this Court.

22   Alternatively, this claim is barred because the state court found it defaulted on

23   state grounds. The state courts construed Gibson's successive PCR petition as alleging a

24   claim of actual innocence. (Doc. 16, Exs. DD, EE.) The appellate court affirmed

25   dismissal of the claim for failing to meet the requirements of Arizona Rule of Criminal

26   Procedure 32.2(b) (requiring petitioner to present meritorious reasons substantiating the

27   claim and the reason it was not presented earlier). This was an independent and adequate

28   state procedural ground, which bars the claim from review in this Court.

**Claim 3**

Gibson contends his counsel was ineffective for failing to: (a) challenge the seizure of the taxi; (b) challenge Gibson's arrest; (c) have his trial severed from his co-defendant; (d) challenge an identification of Gibson; and (e) advocate actual innocence.

As an initial matter, Gibson has never presented subclaim (b) to the state courts. In his PCR petition, Gibson alleged subclaims (a) and (c) – that his counsel was ineffective for failing to challenge the stop of the taxi and failing to seek a trial severance from his co-defendant. (Doc. 16, Ex. J at 13, 16.) The PCR court denied these claims on the merits. However, in his petition for review of the denial, Gibson argued only about the PCR court's denial of his motion for reconsideration as untimely. (*Id.*, Ex. W.) Gibson did not seek review of the PCR court's decision on the merits of these claims. (*Id.*) The court of appeals denied the petition for review as untimely. (*Id.*, Ex. X.) Thus, Gibson did not fairly present subclaims (a) and (c) to the Arizona Court of Appeals during his first PCR proceeding.

In his successive PCR petition and related petition for review, Gibson raised for the first time subclaims (d) and (e), and again argued subclaim (c). (*Id.*, Exs. CC, EE.) [1] The PCR and appellate courts found the claims precluded because they were raised, or could have been raised, in the prior PCR petition. (*Id.*, Exs. DD, EE.)

In Sum: Claim 3(a) was never fairly presented to the appellate court; Claim 3(b) was never fairly presented to any state court; Claims 3(c), (d) and (e) were fairly presented to the appellate court during Gibson's successive PCR proceeding and denied on a procedural ground.

Claims 3(a) and (b)

Subclaims (a) and (b) were never fairly presented to the Arizona Court of Appeals. If Gibson were to return to state court now to litigate these claims, they would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal

---

[1] The petition for review is not in the record. The Court extrapolates as to the claims raised based on the ruling of the appellate court. (Doc. 16, Ex. EE.)

Procedure because they do not fall within an exception to preclusion. Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h). Therefore, subclaims (a) and (b) are technically exhausted but procedurally defaulted.

Claims 3(c), (d) and (e)

Respondents argue subclaims (c), (d), and (e) are barred because the state court found them precluded. The language of the relevant state court ruling, however, is ambiguous. In evaluating exhaustion, the Court relies on the last reasoned state court opinion addressing a claim. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). With respect to these claims, the last reasoned opinion is that of the Arizona Court of Appeals, which held:

> Gibson raised claims of ineffective assistance of counsel in his first post-conviction petition. He therefore is precluded from raising such claims now, as the trial court correctly concluded. *See* Ariz. R. Crim. P. 32.2(a)(2), (3) (precluding claims based on any ground "[f]inally adjudicated on the merits . . . in any previous collateral proceeding," or [t]hat has been waived . . . in any previous collateral proceeding")

(Doc. 16, Ex. EE at 3.)

Claims raised in a prior proceeding are precluded from being raised in a Rule 32 petition based on Arizona Rule of Criminal Procedure 32.2(a)(2). In contrast, claims that could have been but were not raised on appeal or in a prior PCR proceeding are precluded from being brought in a Rule 32 petition based on Rule 32.2(a)(3) because they are considered waived. The PCR court did not indicate which claims it found "precluded" because they had been previously raised as compared to claims that could have been but were not previously raised. The Ninth Circuit has explained the importance of the distinction between a preclusion ruling under subsection (a)(2) and a waiver ruling under subsection (a)(3):

> A claim that has been found to be "precluded" under subsection (a)(2) appears to be a classic exhausted claim and may therefore be subject to consideration in federal habeas. *See Ceja v. Stewart*, 97 F.3d 1246, 1252-53 (9th Cir.1996) (recognizing the distinction between waiver and preclusion, and holding that "[p]reclusion does not provide a basis for federal courts to apply a procedural bar").
>
> In contrast, a claim that has been "waived" under subsection (a)(3) is procedurally defaulted and therefore barred from federal court

consideration, absent a showing of cause and prejudice or fundamental miscarriage of justice.

*Poland v. Stewart*, 169 F.3d 573, 578 (9th Cir. 1999).

A state court's ruling that a claim is precluded may constitute an adequate and independent ground upon which procedural default may be found. *See Ford v. Georgia*, 498 U.S. 411, 423-24 (1991). However, in order to bar federal review, the state court must "clearly and expressly rely on an independent and adequate state law ground." *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). When some claims are barred in state court because they have been previously raised and others are barred because they could have been raised but were waived, and the state court does not distinguish which claims are barred for which reason, the decision is ambiguous and does not clearly and expressly rely on an independent and adequate state ground. *See Valerio v. Crawford*, 306 F.3d 742, 774-75 (9th Cir. 2002) (en banc); *Koerner v. Grigas*, 328 F.3d 1039, 1049-50 (9th Cir. 2003); *Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir. 1996) (assessing Arizona Rule of Criminal Procedure 32.2). Further, in *Valerio*, when the district court looked beyond the state court decision to determine from the record which claims were previously raised and which claims were waived, the Ninth Circuit en banc held that was error and the claims were not procedurally defaulted. 306 F.3d at 773-75, & n.19.

Because the state appellate court did not distinguish between claims that were precluded for having been previously raised, which could be properly exhausted, and claims that were waived, which would be procedurally barred, the decision is ambiguous and does not clearly and expressly rest on an independent and adequate state ground. Therefore, Claims 3(c), (d) and (e) will be reviewed by this Court on the merits.

**Claim 4**

Gibson alleges a Fourteenth Amendment Due Process violation. (Doc. 1 at 9.) Although Gibson refers to exhibit B, he provides no further argument as to this claim in the attached exhibit. (*Id.* at 49-57.) "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (citing *Boehme v. Maxwell*, 423 F.2d 1056, 1058 (9th Cir. 1970)).

Additionally, Gibson acknowledges that he never raised a due process claim before the state courts. (Doc. 1 at 9.) If Gibson were to return to state court now to litigate this claim, it would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because it does not fall within an exception to preclusion. Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h). Therefore, Claim 4 is technically exhausted but procedurally defaulted.

**Cause and Prejudice**

In his Reply, Gibson argues the cause for his defaults is the action of the superior court in erroneously denying his motion for reconsideration as untimely. This argument is relevant solely to the claims raised in Gibson's first PCR petition, Claims 3(a) and 3(c). The Court has determined that it will review Claim 3(c) on the merits, therefore, it evaluates cause solely as a possible ground to overcome the default of Claim 3(a).

To establish cause, Gibson must demonstrate that an objective factor external to the defense prevented him from complying with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). This Court acknowledges that the PCR court issued inconsistent orders, allowing Gibson an extension to seek reconsideration and then denying the motion for reconsideration as untimely although it was filed before the extension period expired. However, when the PCR court notified him that his reconsideration was denied, on February 1, it also reminded him that his deadline to file a petition for review remained the same, February 10. Gibson did not seek to extend that period nor did he comply with it.

Although a timely motion for rehearing extends the deadline for a petition for review until 30 days after the court rules on the motion, a motion for rehearing is not a prerequisite to petitioning for review. Ariz. R. Crim. P. 32.9(a), (c). Thus, Gibson could have timely filed a petition for review, regardless of how the motion for rehearing was handled by the state court. Further, when his motion for rehearing was denied on February 1, the Court reaffirmed that his petition for review was still due on February 10. He did not meet that deadline. Even if Gibson believed he was allowed thirty days from

1    the ruling on his motion for rehearing to file a petition for review, the deadline would

2    have been extended only to March 2. He did not file a petition for review until March 26.

3    Gibson has failed to establish that something external precluded him from timely filing a

4    petition for review.

5        Gibson has not demonstrated cause for the default of Claim 3(a). Gibson has not

6    argued cause relating to the default of Claims 1, 2, 3(b), and 4.

7    **Miscarriage of Justice**

8        To demonstrate a fundamental miscarriage of justice to excuse a procedural

9    default, the petitioner must show that "a constitutional violation has probably resulted in

10   the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327

11   (1995). To establish the requisite probability, the petitioner must show that "it is more

12   likely than not that no reasonable juror would have found petitioner guilty beyond a

13   reasonable doubt." *Id*. The Supreme Court has characterized the exacting nature of an

14   actual innocence claim as follows:

15       [A] substantial claim that constitutional error has caused the conviction of
16       an innocent person is extremely rare. . . . To be credible, such a claim
         requires petitioner to support his allegations of constitutional error with
17       new reliable evidence – whether it be exculpatory scientific evidence,
         trustworthy eyewitness accounts, or critical physical evidence – that was
18       not presented at trial.  Because such evidence is obviously unavailable in
         the vast majority of cases, claims of actual innocence are rarely successful.

19
20   *Id.* at 324; *see also House v. Bell*, 547 U.S. 518, 538 (2006).

21       Gibson argues that he is actually innocent. However, his argument is premised on

22   the evidence presented at trial. (Doc. 1 at 53-54, 56; Doc. 17 at 4.) He has not provided

23   any new reliable evidence to support a claim of actual innocence. Therefore, he fails to

24   establish that there has been a fundamental miscarriage of justice.

25                              **MERITS ANALYSIS**

26   **Legal Standards for Relief under the AEDPA**

27       The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) created a

28   "highly deferential standard for evaluating state-court rulings' . . . demand[ing] that state-
     court decisions be given the benefit of the doubt." *Woodford v. Visciotti*,  537 U.S. 19, 24

(2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)). Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The last relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

"The threshold test under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006).

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1). The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Williams*, 529 U.S. at 405-06; *see Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing

- 12 -

1  legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the
2  particular . . . case" or "unreasonably extends a legal principle from [Supreme Court]
3  precedent to a new context where it should not apply or unreasonably refuses to extend
4  the principle to a new context where it should apply." *Williams*, 529 U.S. at 407. For a
5  federal court to find a state court's application of Supreme Court precedent
6  "unreasonable," the petitioner must show that the state court's decision was not merely
7  incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Schriro v. Landrigan*,
8  550 U.S. 465, 473 (2007); *Visciotti*, 537 U.S. at 25. "A state court's determination that a
9  claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could
10  disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.
11  Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

12        Under the standard set forth in § 2254(d)(2), habeas relief is available only if the
13  state court decision was based on an unreasonable determination of the facts. *Miller-El v.*
14  *Dretke*, 545 U.S. 231, 240 (2005) (Miller-El II). In considering a challenge under
15  § 2254(d)(2), state court factual determinations are presumed to be correct, and a
16  petitioner bears the "burden of rebutting this presumption by clear and convincing
17  evidence." 28 U.S.C. § 2254(e)(1); *Landrigan*, 550 U.S. at 473-74; *Miller-El II*, 545 U.S.
18  at 240.

19        **Discussion**

20        Claims 3(c), 3(d) and 3(e) each allege ineffective assistance of counsel. IAC
21  claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under
22  *Strickland*, a petitioner must show that counsel's representation fell below an objective
23  standard of reasonableness and that the deficiency prejudiced the defense. *Id.* at 687-88.

24        The inquiry under *Strickland* is highly deferential, and "every effort [must] be
25  made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of
26  counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at
27  the time." *Id.* at 689. Thus, to satisfy *Strickland's* first prong, deficient performance, a

28

1   defendant must overcome "the presumption that, under the circumstances, the challenged

2   action might be considered sound trial strategy." *Id.*

3        Because an IAC claim must satisfy both prongs of *Strickland*, the reviewing court

4   "need not determine whether counsel's performance was deficient before examining the

5   prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697 ("if

6   it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient

7   prejudice . . . that course should be followed"). A petitioner must affirmatively prove

8   prejudice. *Id.* at 693. To demonstrate prejudice, he "must show that there is a reasonable

9   probability that, but for counsel's unprofessional errors, the result of the proceeding

10  would have been different. A reasonable probability is a probability sufficient to

11  undermine confidence in the outcome." *Id.* at 694.

12       <u>Claim 3(c)</u>

13       Gibson alleges counsel was ineffective for failing to have his trial severed from his

14  co-defendant because there were three grounds necessitating a severance. Gibson argues

15  that severance was required because evidence admitted against his co-defendant was

16  incriminating to him; evidence admitted against his co-defendant had a "rub-off" effect;

17  and there was a disparity in the evidence introduced against him and his co-defendant. To

18  support these arguments, Gibson alleges his co-defendant was a convicted felon but

19  Gibson was not, and his co-defendant was identified as one of the robbers of the bank

20  while Gibson was not identified. Additionally, he alleges his only nexus to the crime was

21  that he was arrested in a taxi with his co-defendant and he unknowingly accepted stolen

22  money for selling a car to his co-defendant.

23       This claim was presented to the PCR court and denied because the court found

24  Gibson was not prejudiced by his counsel's decision. (Doc. 16, Ex. N at 3.) As noted by

25  that court, Gibson's co-defendant requested a severance based on mutually antagonistic

26  defenses, which was denied.

27       The Court has reviewed Gibson's arguments and finds he has presented no factual

28  basis for a severance. There was no evidence presented at trial that his co-defendant had a

criminal record, nor was his co-defendant positively identified as a robber of the bank. Gibson has not identified any evidence that was presented against his co-defendant that would not have been admissible in his own trial, such that Gibson was prejudiced. Although the co-defendant may have been directly tied to more links in the circumstantial chain of evidence – identified by the property manager at his apartment complex and registered under his name at the hotel – there was not a significant disparity in the evidence presented against the two defendants. Further, the jury was given an instruction to protect against Gibson's concerns:

> There are two defendants. You must consider the evidence in the case as a whole. However, you must consider the charges against each defendant separately. Each defendant is entitled to have the jury determine the verdict as to each of the crimes charged based upon that defendant's own conduct and from the evidence which applies to that defendant, as if that defendant were being tried alone.

(Doc. 22, Ex. KK at 103-04.) *See State v. Lawson*, 698 P.2d 1266, 1274, 144 Ariz. 547, 555 (1985) (generally a trial court's cautionary instruction will allow the jury to independently evaluate and categorize the evidence against each defendant). Because severance was not clearly required, it was not objectively unreasonable for counsel not to request one. Nor has Petitioner affirmatively established prejudice.

Critically, the trial judge (when ruling on the PCR petition) reached the same conclusion. Because the trial judge would not have granted such a motion on state law grounds, Petitioner was not prejudiced.

Claim 3(d)

Gibson alleges counsel was ineffective for failing to challenge an identification of him. He argues counsel should have requested a pre-trial *Dessureault* hearing.

Gibson does not indicate what identification of him should have been challenged by counsel. Gibson was identified in court by only one witness, a cab driver named Hossein Nasr. Nasr testified that he picked up in his cab two African-American men on October 27, 2009, and he recognized one of them. (Doc. 23, Ex. II at 89, 91.) He had previously worked with the person, and he identified Gibson in court as the person he

1    recognized. (*Id.* at 91.) There was no evidence presented that Nasr saw Gibson between

2    that cab ride and trial.

3        *Dessureault* is implicated only if there has been an unduly suggestive pretrial

4    identification procedure. *State v. Leyvas*, 211 P.3d 1165, 1169, 221 Ariz. 181, 185 (Ct.

5    App. 2009). Here, Nasr identified Gibson at trial based on his prior knowledge of him.

6    There was no suggestive pretrial identification procedure, thus, a *Dessureault* hearing

7    was not required.[2] Counsel's actions were reasonable and Gibson was not prejudiced by

8    the lack of a pre-trial identification hearing.

9        Claim 3(e)

10       Gibson alleges counsel was ineffective for failing to advocate actual innocence.[3]

11   Gibson's counsel argued at trial that Gibson was not guilty, that he was not identified as

12   one of the bank robbers, and she pointed out several inconsistencies that she argued

13   amounted to reasonable doubt. (Doc. 23, Ex. KK at 78-86.) Further, she provided an

14   alternative explanation for the bait money found on Gibson at the time of his arrest – that

15   he had just sold a car to his co-defendant and Gibson did not know the origin of the

16   money. (*Id.* at 80.) Gibson argues that counsel was inept and lacked preparation and

17   performance, but he did not articulate a single thing counsel should have done but did not

18   (apart from the issues raised in the other parts of Claim 3). Because there is no factual

19   basis for Gibson's argument that trial counsel did not act reasonably and he has failed to

20   establish prejudice, this claim is without merit.

21                                  **RECOMMENDATION**

22       Claims 1 and 2 are not cognizable and are procedurally defaulted. Claims 3(a) and

23   (b) are procedurally defaulted. Claims 3(c), (d), and (e) are without merit. Claim 4 is

---

25       [2] Gibson argues that his identity was never established, citing argument by the
26   state that no one identified the bank robbers because they covered their faces during the
     crime. (Doc. 1 at 53 (citing Doc. 23, Ex. II at 23).) Gibson appears to hold an erroneous
     belief that a pre-trial identification hearing is warranted under these circumstances.

27       [3] In his supplemental reply brief, Gibson suggests for the first time that his
28   appellate counsel also was ineffective for failing to raise a claim of actual innocence.
     (Doc. 22 at 7-8.) This claim was not included in the Petition (Doc.1) nor has it been
     exhausted. Therefore, the Court does not address it.

conclusory and procedurally defaulted. Gibson has not established cause and prejudice or a fundamental miscarriage of justice to overcome the defaults. Based on the foregoing, the Magistrate Judge recommends the District Court DISMISS the Petition for Writ of Habeas Corpus (Doc. 1).

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **CV 13-1548-TUC-DCB**.

Dated this 27th day of March, 2015.


D. Thomas Ferraro
United States Magistrate Judge